# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AURORA CHICAGO LAKESHORE, HOSPITAL, | )<br>)<br>) Case No. 19-cv-5281 |
| Plaintiff, | )<br>) Judge Sharon Johnson Coleman |
| v. | ) |
| ALEX M. AZAR II, Secretary of Health and Human Services, et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aurora Chicago Lakeshore Hospital ("Aurora") brought this lawsuit against the Secretary of the United States Department of Health and Human Services ("HHS"), Alex M. Azar, II, the Administrator for the Centers for Medicare and Medicaid Services ("CMS"), and the Acting Regional Administrator for CMS (collectively "CMS") seeking to enjoin defendants from terminating Aurora's Medicare Provider Agreement. Before the Court are Aurora's motion for a preliminary injunction brought pursuant to Federal Rule of Civil Procedure 65(a) and CMS's Rule 12(b)(1) motion to dismiss. For the following reasons, the Court denies Aurora's motion for a preliminary injunction and also denies CMS's motion to dismiss as moot.

**Background**

On December 21, 2018, the Court entered a preliminary injunction order as it relates to CMS's December 15, 2018 final termination notice in the parties' related matter, case number 18 C 8162. In that ruling, the Court stated: "The Court expects that CMS, through its agents, will continue to closely monitor Aurora's compliance with Medicare's Conditions of Participation and will swiftly initiate termination proceedings should it find that a recurring violation of Medicare's Conditions of Participation has occurred." *Aurora Chicago Lakeshore Hosp. v. Azar*, 356 F.Supp.3d

749, 761 (N.D. Ill. 2018). The Court presumes familiarity with the December 21, 2018 Memorandum Opinion and Order, along with its other rulings in this matter and 18 C 8162.[1]

To recap, Aurora is an Illinois-licensed behavioral health hospital located in Chicago and is equipped to provide pediatric psychiatric care. It is one of the largest behavioral health providers in Illinois with over one-hundred-and-sixty licensed beds and approximately 5,000 patients annually. Aurora is currently certified to participate in Medicare and Medicaid, and the majority of its patients are beneficiaries under those programs.

A hospital must meet the Conditions of Participation set forth by the Medicare statute and its regulations to receive payment for services rendered to Medicare patients. If those conditions are met, the institution becomes eligible to execute a one-year renewable provider agreement with the Secretary of HHS. 42 U.S.C. § 1395cc. Institutions certified as Medicare providers are subject to periodic surveys conducted by designated state agencies to ensure their compliance with federal standards. *See* 42 U.S.C. § 1395aa; 42 C.F.R. § 405.1904. In Illinois, that state agency is the Illinois Department of Public Health ("IDPH").

On August 2, 2019, CMS notified Aurora that it would terminate its Provider Agreement effective August 19, 2019 based on the March 21, 2019 ("March Survey") conducted by IDPH. The March Survey concluded that Aurora was out of compliance with a Condition of Participation for hospitals under the Medicare Act, namely, Patient's Rights, 42 C.F.R. § 482.13, along with a finding of immediate jeopardy. In its complaint, Aurora alleges that CMS's attempt to terminate its Provider Agreement violates its due process rights and the Administrative Procedure Act ("APA") because

---

[1] Aurora administratively appealed the December 15, 2018 termination notice to an Administrative Law Judge ("ALJ"), who affirmed CMS's termination of Aurora's Provider Agreement on November 26, 2019 and stayed the ruling contingent on this federal litigation. In discussing Aurora's failures in relation to the November 2018 Survey, the ALJ concluded "Aurora's failure to conduct prompt and thorough investigations related to abuse reflects an indifference about those matters which appears to be shared by the leadership at Aurora." In relation to Aurora's patients, the ALJ stated "[t]hese are some of the most vulnerable people in our society and Aurora has shown it is not up to the task of keeping these children safe."

2

CMS failed to provide Aurora with the opportunity to correct the deficiencies IDPH identified in the March Survey.

Before the March 2019 Survey, IDPH had found that Aurora was out of compliance in four separate 2018 surveys. In November 2019, IDPH conducted another survey and concluded Aurora was out of compliance in relation to 42 C.F.R. § 482.13, Patient's Rights, and that the deficiencies were so serious that they constituted an immediate threat to patient health and safety. On December 3, 2019, CMS sent Aurora yet another termination letter, which is the subject of case number 19 C 8132 that was recently reassigned to this Court.

**Discussion**

Aurora asks the Court to enjoin CMS from terminating its Provider Agreement. A plaintiff seeking a preliminary injunction must first establish that he is likely to succeed on the merits, that there is no adequate remedy at law, and that he is likely to suffer irreparable harm absent preliminary relief. *Glossip v. Gross*, ___ U.S. ___, 135 S.Ct. 2726, 2736, 192 L.Ed 761 (2015); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "If the plaintiff fails to meet any of these threshold requirements, the court 'must deny the injunction.'" *GEFT Outdoors*, 922 F.3d at 364 (citation omitted). To establish the likelihood of success requirement, a plaintiff must show that the chance of success on his claims is better than negligible. *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 966 (7th Cir. 2018). However, if the case has no merit, the Court must deny injunctive relief. *GEFT Outdoors*, 922 F.3d at 368.

Aurora argues that it is likely to succeed on the merits because CMS's August 2, 2019 termination notice violated its due process rights in that CMS did not allow it a reasonable amount of time to achieve compliance before terminating the Provider Agreement. Aurora also contends that the termination notice violates that APA because CMS failed to follow its own regulations. At

3

issue is 42 C.F.R. § 488.28, which allows a provider to submit a plan of correction and gives the provider a reasonable amount of time to achieve compliance.

Relying in part on the HHS Departmental Appeal Board's decisions interpreting § 488.28, CMS contends that permitting a provider to submit an acceptable plan of correction under § 488.28 only applies to standard-level deficiencies and not condition-level deficiencies, as is the case here. *See Apollo Behavioral Health Hosp., LLC*, DAB No. 2561, 2014 WL 1757954, at *7 (2014) ("[S]ection 488.28 provides no opportunity to correct condition-level deficiencies."). Indeed, "CMS may not allow a deficient provider the opportunity to correct where [] the deficiencies are condition level, jeopardize patient health and safety, or 'are of such character as to seriously limit the provider's capacity to render adequate care.'" *Dynamic Visions Home Health Servs. v. CMS*, DAB No. CR2414, 2011 WL 3873396, at *3 (2011) (citation omitted). The Court gives substantial deference to the agency's interpretation of its own regulations. *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012).

Here, the March Survey concluded that Aurora was out of compliance with the Condition of Participation, Patient's Rights, 42 C.F.R. § 482.13, along with a finding of immediate jeopardy. Under § 488.705, a condition-level deficiency means noncompliance as set forth in 42 C.F.R. § 488.24(b), which states "the deficiencies are of such character as to substantially limit the provider's or supplier's capacity to furnish adequate care or which adversely affect the health and safety of patients." The March Survey concluded that Aurora's noncompliance with the condition of Patient's Rights "places all current and future patients at risk for serious harm," which falls under the definition of condition-level noncompliance. *See Community Hospital of Long Beach v. CMS*, DAB No. 1938, 2004 WL 2102876, at *4 (2004). Moreover, the March Survey found that the deficiencies immediately jeopardized patient health and safety, *see* 42 C.F.R. § 488.301, and § 488.28 only applies when deficiencies identified in a survey "neither jeopardize the health and safety of patients nor are

4

of such character as to seriously limit the provider's capacity to render adequate care." 42 C.F.R. § 488.28(b); *see also Rosewood Care Ctr. of Swansea v. Price*, 868 F.3d 605, 615 (7th Cir. 2017) ("The most severe deficiencies are those that present 'immediate jeopardy' to patients.").

In the end, although CMS has given Aurora the opportunity to correct its condition-level deficiencies numerous times in the past, it is not required to afford Aurora yet another opportunity to correct its condition-level deficiencies before terminating its Provider Agreement, especially in light of Aurora's inability to provide a safe environment for its young patients. Because CMS is not required to provide Aurora with the opportunity to correct its condition-level deficiencies under § 488.28, Aurora's due process and APA claims are without merit. Therefore, Aurora has failed to establish the threshold "likelihood of success" requirement for injunctive relief.

**Conclusion**

For the forgoing reasons, the Court denies plaintiff's motion for a preliminary injunction and denies defendants' motion to dismiss as moot. [5, 8]. Civil case terminated.

IT IS SO ORDERED.

Date: 12/19/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

5